MANNING *et al. v.* WILLS *et al.*
WILLS *et al. v.* BEASLEY, superintendent of banks, *et al.*
NESBITT *et al. v.* BEASLEY, superintendent of banks, *et al.*
EISON *et al. v.* BEASLEY, superintendent of banks, *et al.*

Nos. 13891, 13892, 13893, 13894.   October 14, 1941.
Rehearing denied November 13, 1941.

*G. H. Howard, G. B. Walker,* and *H. E. Edwards,* for Manning et al.

*Carl N. Davie* and *Alex McLennan,* for Wills et al.

*E. L. Reagan, assistant attorney-general,* and *Samuel L. Eplan,* for Beasley et al.

DUCKWORTH, Justice. █ The primary complaint of the petitioners is that the superintendent of banks, although he has paid all depositors in full and still has approximately $10,000 in assets of the bank in hand, refuses to refund from the assets in hand the amounts which petitioners and other stockholders have paid in satisfaction of stock assessments made against them. The first in-

quiry therefore is whether or not the law requires or even authorizes the superintendent to make the disbursements sought by petitioners. The law provides that "whenever the superintendent shall have paid to each and every depositor and creditor of such bank, whose claim shall have been duly proven and allowed, the full amount of such claim, and shall have made proper provision for unclaimed and unpaid deposits and disputed claims and deposits, and shall have paid all the expenses of liquidation, the superintendent shall call a meeting of the stockholders of such bank; . . and at such meeting the stockholders shall determine whether the superintendent shall continue as liquidator and shall wind up the affairs of such bank, or whether an agent or agents shall be elected for that purpose; and in so determining, the stockholders shall vote by ballot in person or by duly executed proxy, each share of stock entitling the holder to one vote, and a majority vote of the stock shall be necessary to a determination." Code, § 13-827. The same section of the Code further provides that if the superintendent is chosen to complete the liquidation, he shall make disbursements as follows: "After paying the expenses thereof, and reimbursing the stockholders who have paid any assessments upon their stock the amounts paid by them, respectively, he shall distribute the proceeds among the stockholders in proportion to their several holdings of stock." The powers and duties of a liquidating agent elected at such meeting are defined in the Code, § 13-828, as follows: "Such agent or agents shall convert the assets coming into his or their hands into cash, and shall act for and make distribution of the property of said bank, as is herein provided in case of distribution by the superintendent." It is further provided in the same section that after such agent has executed the required bond and duly qualified, the superintendent shall transfer and deliver to the agent all of the assets of the bank remaining in his hands, and that the superintendent shall thereupon be discharged from any and all liability to the bank and its creditors. Thus it is clear that the superintendent of banks in the present case is neither required nor authorized by law to make the payments to plaintiffs which they seek in this action. The amended petition elsewhere makes general complaints to the effect that the superintendent has not been diligent in protecting the interest of the bank and has not expedited the liquidation thereof. While these general charges do not

set forth specific facts to sustain them, yet if the superintendent has failed in any of the respects complained of, petitioners and others having an interest are afforded an adequate remedy at law. Code, § 64-101; *Bankers Savings & Loan Co.* v. *Better Business Division,* 177 *Ga.* 334 (170 S. E. 291); *Hunter* v. *Moss,* 41 *Ga. App.* 13 (151 S. E. 831). The superintendent of banks is an official of the State whose duties are prescribed by statute, and, under the last cited Code section, he can be required by the writ of mandamus to faithfully perform his duties. It is there declared: "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific legal remedy for the legal rights." Having this adequate remedy at law, the petitioners are not entitled to equitable relief. The Code, § 37-102, declares: "Equity jurisdiction is established and allowed for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done." There are no "peculiar circumstances" alleged in the amended petition.

■ The petition as amended, without specifically praying for a rescission, alleges that plaintiff Maddox and an unnamed number of other stockholders similarly situated had previously transferred their stock certificates to one of the defendants. While in the case of the transfer by the plaintiff it is alleged that she received no consideration, it is also alleged that the defendant claims to have paid to the superintendent of banks in her behalf an unstated amount of interest due on her stock assessment, and the petition nowhere denies the truth of the defendant's claim. It is therefore construed to admit such payment. The petition states that the purpose of the assignment was to transfer from the plaintiff to the defendant Manning her bank stock, but it is alleged that the transfer was fraudulent in that at the time of the transfer all depositors of the bank had been paid in full, and the defendant, being a director as well as the liquidating agent, stood in a confidential relationship to the plaintiff and thus was under duty to disclose the financial condition of the bank to her. It is not asserted that she was without knowledge of the bank's condition and of the amount of assets

then held by it.  No reason is alleged why the records disclosing the assets were not available to the plaintiff as well as to Manning. Assuming, but not deciding, that under the prayer for general relief the petitioner would be entitled to a rescission if the allegations made a case justifying same, we now examine the law as applicable to the foregoing statement of facts.

While a director of a bank does not hold title and is not a strict trustee, he does occupy a fiduciary relation to the stockholders with reference to their shares of stock, and this relationship obtains when such director is dealing with an individual stockholder in the purchase of such stockholder's shares.  *Oliver* v. *Oliver*, 118 *Ga.* 362 (45 S. E. 232) ; *Swann* v. *Wright*, 180 *Ga.* 323 (3) (179 S. E. 86) ; Code, § 37-707.  This rule does not apply to a person who was formerly a director, as to information obtained after the time when the bank was taken over by the superintendent for liquidation, but applies only to information acquired before that time. In the present case it does apply to the defendant Manning as liquidating agent.  When such fiduciary relationship exists, concealment of material facts may amount to fraud.  It is declared in the Code, § 96-203:  "Concealment of material facts may in itself amount to a fraud. . .  When, from any reason, one party has a right to expect full communication of the facts from the other. . .  Where the concealment is of intrinsic qualities of the article which the other party, by the exercise of ordinary prudence and caution, could not discover."  The shareholder can not negligently refuse to examine the facts available to him and still rescind the contract because the director failed to inform him of such facts. Where the opportunities for knowledge are equal, the stockholder takes the consequences of failing to inform himself.  *Dortic* v. *Dugas*, 55 *Ga.* 484.  In *Oliver* v. *Oliver*, supra, where this question was under consideration, it was said:  "If the market or contract price of the stock should be different from the book value, he would be under no legal obligation to call special attention to that fact; for the stockholder is entitled to examine the books, and this source of information, at least theoretically, is equally accessible to both."  Although this court in the *Oliver* case went further than most of the courts of other jurisdictions in holding that a director stands in a fiduciary relation to the individual stockholder, yet it was there ruled that the stockholder can not substitute the

duties of the director for his own duty to examine the facts available and accessible to his inspection. The pleaded facts in the present case are insufficient to show fraudulent concealment or breach of duty on the part of Manning in the purchase of the plaintiff's stock.

The petition as amended contains an averment that the defendant Manning represented to some of the stockholders from whom he purchased stock that it was without value; and while there is no prayer for rescission because of fraud, we examine this phase of the amended petition to determine whether or not grounds are alleged sufficient to authorize a rescission, again assuming, but not deciding, that the prayer for general relief would be sufficient to authorize rescission. It is provided by the Code, § 20-906, that a contract may be rescinded for fraud. But a contract procured by fraud is not void, but voidable only. *Jordy* v. *Dunlevie,* 139 *Ga.* 325 (77 S. E. 162). Such a contract may be ratified by the party defrauded, and when so ratified it becomes valid and binding upon all. *Legg* v. *Hood,* 154 *Ga.* 28 (2) (113 S. E. 642) ; *Horne* v. *Evans,* 31 *Ga. App.* 370 (7) (120 S. E. 787). To rescind such a contract one must be diligent in discovering the fraud (*Cohron* v. *Woodland Hills Co.,* 164 *Ga.* 581, 139 S. E. 56), and upon discovery of the fraud he must act at once and announce his purpose to rescind and adhere thereto. *Gibson* v. *Alford,* 161 *Ga.* 672 (5) (132 S. E. 442). A delay in seeking a rescission and restoring or offering to restore the benefits received under the contract may constitute a waiver of the fraud and a bar to a rescission. *Smith* v. *Estey Organ Co.,* 100 *Ga.* 628 (28 S. E. 392) ; *Petty* v. *Brunswick & Western Railway Co.,* 109 *Ga.* 666 (5) (35 S. E. 82) ; *Reynolds & Hamby Estate Mortgage Co.* v. *Martin,* 116 *Ga.* 495 (2-c) (42 S. E. 796) ; *Williams* v. *Fouché,* 157 *Ga.* 227 (121 S. E. 217). As was held in *DeLamar* v. *Fidelity Loan & Investment Co.,* 158 *Ga.* 361 (123 S. E. 116), there must be restitution before there can be absolution. And such restitution or tender thereof must be pleaded. *Garner* v. *Butler,* 144 *Ga.* 441 (87 S. E. 471). The petition does not show that the plaintiff Maddox has ever announced to the defendant Manning an intention to rescind, nor does it show a restoration or tender of the amount paid by Manning as interest on her stock assessment. The petition as amended therefore alleged no ground for equitable relief, and the general demurrer raising this question should have been sustained.

■ An intervention was filed by a number of stockholders, attacking various transfers of shares of stock to one of the defendants, and seeking the right to participate as stockholders in the remaining assets of the bank, but praying for no additional equitable relief. Although this intervention was by order of court allowed and intervenors were made parties plaintiff to the case, the intervention gave no strength to the amended petition, but rather was dependent upon the sufficiency of that petition. Since the petition was insufficient and must fall because no cause of action is alleged therein, the intervention must likewise fall and meet the same fate as the petition. *Branan* v. *Baxter,* 122 *Ga.* 222 (50 S. E. 45) ; *Smith* v. *Manning,* 155 *Ga.* 209 (4) (116 S. E. 813) ; *Continental Trust Co.* v. *Sabine Basket Co.,* 165 *Ga.* 591 (141 S. E. 664). The error in the judgment overruling the general demurrer to the amended petition renders nugatory all subsequent proceedings in the case.

*Judgment reversed on the main bill of exceptions; cross-bills dismissed. All the Justices concur.*